**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CRIMINAL ACTION NO. 17-54-DLB-CJS**

**UNITED STATES OF AMERICA**                                                      **PLAINTIFF**

**v.**          <u>**ORDER ADOPTING REPORT AND RECOMMENDATION**</u>

**TRONTEZ MAHAFFEY
TYRA NELSON**                                                        **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon Defendant Tyra Nelson's Motion to Suppress (Doc. # 38), in which Defendant Trontez Mahaffey has joined (Doc. # 40), and Magistrate Judge Candace J. Smith's Report and Recommendation ("R&R"), wherein she recommends that Defendants' Motions be denied. (Doc. # 57). Defendants each having filed Objections to the R&R (Docs. # 58 and 59), the Motions are ripe for the Court's review. For the reasons that follow, Defendants' Objections are **overruled**, the R&R is **adopted**, and Defendants' Motions to Suppress (Docs. # 38 and 40) are **denied**.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

During a one-month span in the summer of 2017, airport police found three sets of abandoned suitcases in the short-term parking garage at Cincinnati/Northern Kentucky International Airport ("CVG")—twice on July 27, 2017, in row A36, and once again on August 24, 2017, in row A35. (Doc. # 57 at 2). Officers deployed a narcotics canine to test the two sets of luggage found on July 27, and the canine "alerted," indicating the presence of narcotics; however, the bags were opened and found to be empty. *Id.* at 2.

Although a canine was not available to test the third set of luggage found on August 24; officers opened the suitcases and again found them to be empty, but could smell the odor of marijuana inside. *Id.* at 2-3. The luggage all looked new, and some of the bags had pieces of the price tag still attached as if recently purchased. *Id.* at 4. The second set of bags found later in the day on July 27 consisted of a black Protégé roller suitcase and a Coleman roller suitcase. *Id.* Some of the bags found on August 24 appeared to be the same brand; the second set of bags found on July 27 and the set recovered on August 24 each included a black Protégé roller suitcase. *Id.* This pattern of suspicious luggage found abandoned in the same area of the short-term parking garage spurred a narcotics investigation by DEA task force agents with the CVG Airport Police Department, and culminated with the arrest of Defendants Nelson and Mahaffey on September 8, 2017. *Id.* at 2-8.

Officers traced closed-circuit television (CCTV) footage to connect the August 24 luggage with three passengers who arrived at CVG on Frontier flight 1870 from Phoenix, Arizona—Timaya Smith, Raniza Anderson Irby, and Ashley Drake. (Doc. # 57 at 3). The women can be seen walking through the airport—at times, walking together, and at other times, separated as if they do not know each other—and into the short-term parking garage near where the officers found the abandoned luggage. *Id.* CCTV footage then shows Drake driving out of the garage in a vehicle registered to her mother, while Smith and Irby exit the garage on foot without the luggage and depart in separate cars at the passenger pickup area. *Id.* at 4. Identifying Phoenix, the women's inbound flight origin, as one of many "source cities" of narcotics for the Cincinnati area, airport police began to track inbound Frontier flights from Phoenix to target luggage that appeared to be recently-

purchased.  *Id.* at 4.

On September 8, 2017—the day of the subject arrest—officers monitoring the inbound Phoenix flight observed the flight crew unload all the baggage from the plane. (Doc. # 57 at 4).  The officers identified three bags similar in appearance to the abandoned luggage.  Just like the prior three sets of abandoned luggage, the three bags identified on September 8 looked "brand new," with portions of the price tags still attached, and little sign of wear on the wheels.  *Id.*  The September 8 bags were made by the same brands as some of the abandoned luggage—namely, two Protégé bags and one Coleman.  *Id.*  Of the three September 8 bags pulled, Defendant Tyra Nelson's name was affixed to two of the tags, and Defendant Trontez Mahaffey's name was affixed to a tag on the third.

The officers gathered the three September 8 bags, selected three additional, random bags from the flight, and arranged them in a bag sorting room.  *Id.*  The officers deployed the same narcotics canine.  *Id.*  The canine "alerted," signaling the presence of narcotics, on the three identified bags, but not the three random bags.  *Id.*  The officers then placed the three identified bags back onto the baggage system with the other luggage.  *Id.*  Subsequently, the officers observed Defendants Nelson and Mahaffey retrieve the three bags at baggage claim.  *Id.*  Defendant Mahaffey also retrieved a fourth bag that the officers had not previously identified.  *Id.*  Mahaffey was observed reading the name tags on his bags when he pulled them off the conveyor belt.

At least four officers observed from a distance as Defendants Nelson and Mahaffey rolled the identified bags from baggage claim to the short-term parking garage and walked down row A34-35, near the same area the previous sets of abandoned bags had been found.  (Doc. # 57 at 6).  Defendants stopped at a white Chevrolet vehicle that was backed

into a parking space and rolled their bags toward the rear of the vehicle, where the officers were unable to see what Defendants were doing. *Id.* The Defendants began walking out from the back of the vehicle without the bags, and the officers approached and identified themselves. *Id.* Mahaffey's body language indicated to the officers that he was going to try to run, so the Defendants were ordered to the ground. *Id.* at 6-7. Both Defendants complied. *Id.* at 7. Locating the luggage near the rear of the white Chevrolet, the officers observed that the tags had been removed from the bags and discarded on the back of the vehicle. *Id.* Two of the discarded tags—marked with Nelson's name—corresponded with bag identification stickers the airline had placed on two of the suitcases; however, the officers were not able to find tags with Mahaffey's name, and the stickers had been removed from the other two pieces of luggage. *Id.* Before Defendants were transported to the airport police station, officers ran the license plate of the white Chevrolet and found it to be registered to Ashley Drake—one of the three women that the officers had observed on August 24, 2017, arriving from Phoenix on the Frontier flight and entering the parking garage with the abandoned bags. *Id.* at 8.

The officers then transported Defendants Nelson and Mahaffey to the airport police station and read the *Miranda* warnings to them. (Doc. # 57 at 8). Defendant Nelson signed a consent form granting permission to search her two bags, which were found to contain forty-three pounds of marijuana. *Id.* Mahaffey refused to consent to the search of the third bag. *Id.* The officers obtained a search warrant to search both of Mahaffey's two suitcases, finding four pounds of methamphetamine and thirty-seven pounds of marijuana. *Id.*

On December 14, 2017, a federal grand jury returned an Indictment against the Defendants, charging them with conspiracy to possess with the intent to distribute 500 grams or more of a substance containing methamphetamine, in violation of 21 U.S.C. § 846 (Count One). (Doc. # 1 at 1). Defendants were also charged with aiding and abetting each other to knowingly and intentionally possess with the intent to distribute 500 grams or more of a substance containing methamphetamine (Count Two), and a detectable amount of marijuana (Count Three), all in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (Doc. # 1 at 2).

On June 18, 2018, Defendant Nelson filed a Motion to Suppress, arguing that the officers lacked probable cause to arrest her. (Doc. # 38). Defendant Mahaffey joined in Nelson's Motion, echoing that his arrest was not supported by probable cause. (Doc. # 40). After the United States filed its Response (Doc. # 41), Judge Smith held an evidentiary hearing on August 3, 2018. *See* (Docs. # 46 and 49). The parties then submitted post-hearing briefing, *see* (Docs. # 54, 55, and 56), and Judge Smith subsequently issued an R&R, recommending that Defendants' Motions be denied. (Doc. # 57). Defendants each having filed Objections to the R&R (Docs. # 58 and 59), the Motions to Suppress are ripe for the Court's review.

## II. ANALYSIS

### A. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 59 of the Federal Rules of Criminal Procedure, a district court may refer a motion to suppress to a magistrate judge for the preparation of a report and recommendation. "The magistrate judge must promptly conduct the required proceedings and enter on the record a recommendation for

disposing of the matter, including any proposed findings of fact." Fed. R. Crim. P. 59(b)(1). If a party files timely objections to the recommendation, the district court must consider those objections de novo and accept, reject or modify the recommendation." Fed. R. Crim. P. 59(b)(3). Failure to object to a magistrate judge's findings or conclusions results in waiver of those objections. Fed. R. Crim. P. 59(b)(2).

Moreover, the objections must be specific. "[V]ague, general or conclusory objections" are tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)). Therefore, "an 'objection' that does nothing more than state a disagreement with a magistrate judge's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *United States v. Vanover*, No. 2:10-cr-14-DLB, 2017 WL 1356328, *1 (E.D. Ky. Apr. 11, 2017) (quoting *VanDiver v. Martin*, 304 F. Supp. 3d 934, 938 (E.D. Mich. 2004)).

Defendants Nelson and Mahaffey lodge two central objections. First, both Defendants object to Judge Smith's finding that the officers' initial seizure of their persons in the parking garage on September 8, 2017 was a *Terry* stop requiring only reasonable and articulable suspicion that the person was engaged in criminal activity. Defendants assert that the seizure constituted an arrest, necessitating a showing of probable cause, and that the United States has failed to make such a showing of probable cause. (Docs. # 58 at 1-2 and 59 at 1-6). Second, Defendants object to Judge Smith's finding that the narcotics canine gave a positive indication for the presence of marijuana, sufficient to establish probable cause. (Docs. # 58 at 2 and 59 at 6-9). The Court will address each of Defendants' objections in turn.

### B. The seizure of Defendants' persons and luggage did not violate the Fourth Amendment because the officers had probable cause to arrest.

Defendants first object to Judge Smith's finding, *see* (Doc. # 57 at 10), that the initial seizure in the parking garage was merely a *Terry* stop; rather, Defendants argue that the seizure constituted an arrest for which the Government cannot demonstrate the requisite probable cause. (Docs. # 58 at 1-2 and 59 at 1-6). The Court finds that Defendants have failed to demonstrate a Fourth Amendment violation warranting suppression.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. Sufficient probable cause to believe that a criminal offense has been or is being committed—and therefore permitting a warrantless arrest—exists if, at the moment the arrest was made, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). *See also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *accord Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988).

There is no "precise formula" for assessing probable cause. *United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998). Rather, "[t]o determine whether an officer had probable cause to arrest an individual, [courts] examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). This

standard is a "practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* Thus, "[w]hile probable cause means that officers must show more than mere suspicion, the probable cause requirement does not require that they possess evidence sufficient to establish a prima facie case at trial, much less evidence sufficient to establish guilt beyond a reasonable doubt." *United States v. Romero*, 452 F.3d 610, 616 (6th Cir. 2006) (quoting *Strickland*, 144 F.3d at 416).

An exception to this general rule requiring probable cause was established in *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny. To perform an investigative seizure—which falls short of an arrest—officers need not show probable cause, but rather need only demonstrate a "reasonable and articulable suspicion that the person [was] engaged in criminal activity." *United States v. Knox*, 839 F.2d 285, 289 (6th Cir. 1988), *cert. denied*, 490 U.S. 1019 (1989). However, "[t]he scope of the detention must be carefully tailored to its underlying justification." *Florida v. Royer*, 460 U.S. 491, 500 (1983).

Here, Defendants' objection to the *Terry* stop is futile because it does not alter the Court's finding that the seizure comported with the Fourth Amendment. Even if the Court were to accept Defendants' position that the seizure exceeded the scope of a *Terry* stop and "approach[ed] the conditions of arrest," *see Royer*, 460 U.S. at 499, Judge Smith nonetheless correctly found that the officers had probable cause to search the luggage and arrest the Defendants at the time the initial seizure occurred. (Doc. # 57 at 18).

Attempting to minimize facts that support a finding of probable cause, Defendants point to several facts on the record that, in a vacuum, are not indicative of criminal activity. Defendants point out, *inter alia*, that singling out Phoenix as a source city is misleading

because a large number of major U.S. cities—not just Phoenix—are considered "source" cities; that the first three sets of abandoned bags found on July 27 and August 24 were empty and contained no narcotics; and that the instances of abandoned luggage were not necessarily related because they were spaced out in time over several months. (Doc. # 59 at 4-6). But probable cause is not determined in a vacuum. The Sixth Circuit has expressly stated that "[w]hen determining if a police officer had probable cause to conduct a warrantless arrest, we look to the totality of the circumstances." *United States v. Brooks*, 270 F. App'x 382, 384 (6th Cir. 2008). *See also United States v. Valencia*, 921 F.2d 282 (table decision), 1990 WL 212625, *1 (9th Cir. 1990) ("Thus, seemingly innocent conduct may provide the basis for probable cause when viewed in light of all of the information known at the time of the arrest.").

In this case, by the time of the September 8, 2017 seizure, the officers had been presented with a striking pattern of behavior that would lead a reasonably prudent person to believe that Defendants Nelson and Mahaffey were engaging in narcotics trafficking, justifying arrest. First, Defendants' behavior substantially mirrored the behavior of Timaya Smith, Raniza Anderson Irby, and Ashley Drake that officers had previously observed on the CCTV footage. Defendants arrived on the *same* inbound flight—Frontier 1870—from the *same* location of Phoenix, Arizona—known to the officers to be a "source" city—and rolled their luggage to the *same* portion of the parking garage where the three other sets of the *same* type of luggage had been abandoned. Officers could tell from the bag tags discarded on the back of the nearby vehicle that identifying information had been removed from Defendants' luggage in the *same* manner. The Defendants then appeared to be following the *same* pattern of leaving the luggage behind and starting to walk away.

Compounded against these facts, Defendants' luggage consisted of exactly the *same* brands as much of the previously-abandoned luggage—Coleman and Protégé—and was in the *same* new condition. Moreover, just as the officers had observed with the prior sets of abandoned luggage, some of the bags still had price tags affixed. Defendants' attempts to distinguish Defendants' circumstances, therefore, is unavailing; under the totality of the circumstances, these facts are sufficient to establish probable cause.

Defendants' attempt to minimize the timing at issue is likewise unavailing. *See* (Doc. # 59 at 5). As Officer Sautter testified, "[t]hat's the first time in my fifteen-year career that I've ever seen bags with information removed and left abandoned in the short-term garage." (Doc. # 49 at 29). Given proper perspective, the appearance of four sets of abandoned bags in the same location within the span of about forty-five days is much more probative than Defendants let on.

In addition to this strikingly similar pattern of suspicious behavior that, standing alone, is more than sufficient to give rise to probable cause, the officers' investigation of the bags themselves prior to the seizure also independently justified probable cause. The officers detected the odor of marijuana on the third set of previously-abandoned luggage, giving rise to a suspicion that the suitcases were being used to transport drugs. On the date of the arrest, the certified narcotics dog then "alerted" on the Defendants' three bags—even isolating them from three "dummy" bags. *See* (Doc. # 49 at 91-92). Looking to the totality of the circumstances, the "historical facts, viewed from the standpoint of an objectively reasonable police officer" establish that the airport police had probable cause to arrest Defendants at the time of the seizure. Accordingly, Defendants' Objections to the R&R's conclusions as to the constitutionality of the seizure are **overruled**.

## C. The narcotics canine's positive indication on the luggage supported a finding of probable cause.

Defendants' final objection to the R&R disagrees with Judge Smith's finding that "a positive dog alert by a reliable and trained dog, standing alone, establishes probable cause." (Doc. # 57 at 20). First, Defendant Nelson maintains that "[a]t best . . . a positive canine alert may amount to probable cause to search a bag but not immediately arrest an individual." (Doc. # 59 at 6). Defendant's argument is misplaced. The Sixth Circuit expressly noted in *United States v. Alvarado* that "a positive alert by trained drug sniffing dogs is enough to establish probable cause." 936 F.2d 573 (table decision), 1991 WL 119265, at *2 (6th Cir. July 1, 1991) (citations omitted). Accordingly, the Sixth Circuit in *Alvarado* found that "probable cause to arrest defendant existed from the moment he took possession of the luggage on which Lieutenant Bibbs' trained narcotics dog had previously alerted." *Alvarado*, 1991 WL 119265, at *2. *See also Knox*, 839 F.2d at 291; *United States v. Taylor*, 955 F. Supp. 763, 769 (E.D. Mich. Feb. 11, 1997) (noting that an "alert" by a properly-trained narcotics canine "is sufficient to constitute probable cause for an arrest or search."); *United States v. Davidoff*, 46 F. Supp.3d 744 (N.D. Ohio 2014) (police dog's positive alert to the presence of narcotics gave rise to probable cause); *United States v. Chin*, No. 1:13-CR-91, 2014 WL 2009054, at *10 (E.D. Tenn. May 16, 2014) (concluding that alert by properly trained narcotics dog provided probable cause to search luggage).

Here, Defendant Nelson acknowledges the Sixth Circuit's holding in *Alvarado*, but simply disagrees with the Sixth Circuit's legal conclusion and "maintains that a positive canine sniff does not constitutionally allow an arrest of an individual standing alone." (Doc. # 59 at 7). As explained herein in Section II.B, *supra*, this is certainly not a situation

of a positive canine sniff standing alone. Upon final resolution of this case, Defendant may appeal this Court's decision to the Sixth Circuit; in the meantime, the Court must uphold the law of the Sixth Circuit and find that probable cause to arrest Defendants Nelson and Mahaffey existed from the moment that they took possession of the luggage on which the narcotics canine had previously alerted. *See id.*

Next, Defendants dispute Judge Smith's finding that the narcotics canine positively "alerted" to the presence of narcotics when deployed on the previously-abandoned sets of luggage. (Docs. # 58 at 2 and 59 at 7). Nelson argues that the canine could not have had a legitimate "hit" or positive response, because those bags were ultimately found to be empty. (Doc. # 59 at 7). Defendant Nelson also seeks to rely on the fact that the abandoned bags were empty to undercut the canine's reliability as a drug-sniffing dog. *Id.* at 7-9.

First, the Court notes that Defendant Nelson does not specify any legal authority whatsoever in support of this argument. *See* (Doc. # 59 at 6-9). Moreover, the record supports Judge Smith's finding that the canine was reliable and well-trained. *See* (Doc. # 57 at 18). As the R&R noted, "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust [its] alert." (Doc. # 57 at 15) (citing *Florida v. Harris*, 568 U.S. 237, 246 (2013). Courts apply the totality-of-the-circumstances approach when assessing the reliability of a positive alert by a trained dog, weighing the competing evidence to determine "whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Harris*, 568 U.S. at 248.

The record demonstrates that the canine's handler testified extensively as to the narcotics canine's training and certification by the North American Police Working Dog Association. (Doc. # 49 at 85-88). The dog did alert on the empty first two sets of previously-abandoned bags, which were empty. However, applying a totality-of-the-circumstances approach, these so-called "false positives" do not undercut the canine's reliability. The officers detected the odor of marijuana in the third set of abandoned bags found in the same area of the parking garage. (Doc. # 56 at 77). Moreover, when the officers pulled Defendants' bags and three random bags to conduct a scan, the canine alerted on Defendants' bags—which the officers later confirmed contained a large amount of narcotics—but did not give any kind of indication on the other three "dummy" bags. (Doc. # 49 at 91-92). Weighing the competing evidence surrounding the narcotics canine's alert, and viewing the record through the lens of common sense, the officers were justified in relying on the canine's positive alert. The record shows that the canine was well-trained, reliable, and alerted properly. *See United States v. Johnson*, 267 F. App'x 412, 416 (6th Cir. 2008). Thus, because there was probable cause to arrest Defendants Nelson and Mahaffey, suppression of the evidence is not warranted. Defendants' Objections (Docs. # 58 and 59) are **overruled**, and the Defendants' Motions to Suppress (Docs. # 38 and 40) are **denied**.

### III. CONCLUSION

Accordingly, for the reasons set forth herein,

**IT IS ORDERED** as follows:

(1) The Report and Recommendation of the United States Magistrate Judge (Doc. # 57) is hereby **adopted** as the findings of fact and conclusions of law of the Court;

(2) Defendants' Objections (Docs. # 58 and 59) are hereby **overruled** as set forth herein;

(3) Defendants' Motions to Suppress (Docs. # 38 and 40) are hereby **denied in full**;

(4) The time period between the filing of the first Defendant's Motion to Suppress on June 18, 2018 and this Order, totaling 170 days, is **excluded** from the provisions of the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(1)(D); and

(5) This matter is scheduled for a **Status Conference** on **Tuesday, December 18, 2018, at 10:00 a.m. in Covington**. The Defendants shall be present for the conference and the parties shall be prepared to schedule the case for trial at that conference.

This 5th day of December, 2018.

Signed By:
*David L. Bunning*
United States District Judge

L:\DATA\ORDERS\Covington Criminal\2017\17-54 Order Adopting R&R re Mtn to Suppress.docx

14